IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALJAWON DAWYANE MILES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-580-WHA-KFP |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

This matter is before the court on Aljawon Dawyane Miles's Motion to Vacate, Set

Aside, or Correct Sentence Under 28 U.S.C. § 2255, by which Miles challenges the June

2017 revocation of his federal supervised release. CIV Doc. 1.[1]

**II.   BACKGROUND**

**A.   Criminal Conviction and Sentence**

In February 2010, Miles pleaded guilty to failing to register as a sex offender, in

violation of 18 U.S.C. § 2250(a). CR Doc. 35. On June 3, 2010, the district court sentenced

Miles to 48 months' imprisonment to be followed by a life term of supervised release. CR

Doc. 54.

---

[1] References to document numbers assigned by the Clerk in this civil action, Case No. 3:18-CV-580-WHA-KFP, are designated as "CIV Doc." References to document numbers assigned by the Clerk in the supervised release/revocation matters in Miles's criminal case, Case No. 3:09cr132-WHA, are designated as "CR Doc." Pinpoint citations are to the page of the electronically filed document in the Court's CM/ECF filing system, which may not correspond to pagination on the hard copy of the filed document.

### B.        Revocation of Supervised Release

In May 2017, the U.S. Probation Office filed a petition to revoke Miles's supervised release based on his commission of new crimes. CR Doc. 55. The Probation Office amended the revocation petition in June 2017. CR Docs. 68, 73. A preliminary revocation hearing was held on June 16, 2017. CR Doc. 74. A final revocation hearing was held on June 26–27, 2017. CR Docs. 83, 89. After the presentation of evidence, the district court found Miles twice violated the condition of his supervised release that he not commit a federal, state, or local crime. CR Doc. 75. Specifically, the district court found Miles, an adult sex offender, violated Ala. Code § 15-20A-11 by residing at a residence within 2,000 feet of a school and Ala. Code § 15-20A-10 by failing to register that address with local law enforcement. CR Doc. 83 at 56. The district court revoked Miles's supervised release and sentenced him to 24 months' imprisonment to be followed by a 120-month term of supervised release. CR Doc. 76; CR Doc. 83 at 63–64.

Miles appealed, arguing that (1) there was insufficient evidence to establish that he lived at the Phenix City residence alleged in the revocation petition because no one testified as to a particular night that he stayed at the residence and the weight of the evidence was in favor of Miles not residing there; and (2) his sentence was procedurally unreasonable because the district court did not explain the sentence, acknowledge the parties' arguments, or meaningfully consider any of the 18 U.S.C. § 3553(a) factors. CR Doc. 91. In March 2018, the Eleventh Circuit vacated Miles's sentence on the procedural reasonableness ground and remanded the case for resentencing. *Id*.; *United States v. Miles*, 727 F. App'x 578 (11th Cir. 2018).

Miles was resentenced on April 25, 2018, and the district court entered an amended judgment again sentencing Miles to 24 months' imprisonment to be followed by a 120-month term of supervised release. CR Docs. 95, 96, 109. Miles appealed the new judgment but later dismissed his appeal. CR Doc. 110.

### C.      § 2255 Motion

On June 10, 2018, Miles filed a § 2255 motion, which he twice amended before the Government filed a response. CIV Docs. 1, 2, 5. In his § 2255 motion as amended, Miles asserts that his lawyers in the revocation proceedings rendered ineffective assistance of counsel in the following ways:

1.    Counsel failed to investigate, obtain, and introduce exculpatory evidence from AT&T regarding where Miles resided.

2.    Counsel failed to call Miles's fiancée as a witness.

3.    Counsel failed to investigate whether the Phenix City residence in question was located within 2,000 feet of a school.

4.    Counsel prevented Miles from testifying in his own defense.

5.    Counsel failed to object to perjured testimony and did not cross-examine and impeach a Government witness.

6.    Counsel rejected a plea offer from the Government without informing Miles of the offer.

7.    Counsel failed to advise Miles of the Government's burden of proof in a revocation proceeding.

CIV Docs. 1, 2, 5. In May 2019, Miles amended his § 2255 motion again, this time to assert that "newly discovered evidence" shows he lived at a residence other than the one alleged in the petition to revoke his supervised release. CIV Doc. 13. After careful review of the §

2255 motion as amended, the parties' submissions, and the record, the undersigned recommends that Miles's motion be denied without an evidentiary hearing and that this case be dismissed with prejudice.

## III.   DISCUSSION

### A.   General Standard of Review

The grounds for collateral attacks under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Ineffective Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a movant must establish that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove prejudice, the movant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's unprofessional errors." *Patel v. United States*, 252 F. App'x 970, 972 (11th Cir. 2007). Unless the movant satisfies the

showings required on both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### C.    Miles's Claims

#### 1.    Investigation of AT&T Evidence

Miles contends that his counsel rendered ineffective assistance by failing to investigate, obtain, and introduce exculpatory evidence from AT&T regarding where Miles allegedly resided. CIV Doc. 1 at 4, 8. At the preliminary revocation hearing and later at the final revocation hearing, the Government offered an AT&T envelope addressed to Miles (with his name misspelled) at the Phenix City address alleged in the petition to revoke his supervised release. CR Doc. 74 at 10–11, 26–27; CR Doc. 89 at 21–22, 38–39. Miles's girlfriend, Kiana Franklin, who resided at the same residence, had given the envelope to Terrance Walker, a detective in the sex offenders unit of the Phenix City Police, when filing a complaint against Miles to show that Miles had been living with her. The Government offered the envelope as circumstantial evidence that Miles was paying for a service account from AT&T at the residence in question—and thus was likely also living there.

Miles claims that, sometime before the revocation hearing, he "got a recording from AT&T where they stated they never sent any mail for me to [the address in question]. [T]hey also stated they never misspell a name cause they go by the social security number and the name under it." CR Doc. 1 at 4. Miles argues that, had his counsel "got in touch

with AT&T and retrieved this info" and played the recording at the preliminary and final

revocation hearings, the outcome of the hearings would have been different.[2] *Id*. at 4, 8.

Responding to Miles's claim, Miles's lawyers in the revocation proceedings,

Nathaniel Wenstrup and Cecilia Vaca,[3] filed affidavits in which they acknowledge they did

not investigate the AT&T envelope and Miles's account status before the preliminary

revocation hearing and that they had the AT&T recording before the final revocation

hearing but chose not to play it at the hearing. CIV Doc. 7 at 2; CIV Doc. 8 at 2.

The AT&T envelope addressed to Miles was empty when Kiana Franklin gave it to

Detective Walker. CR Doc. 89 at 21–22, 37–38. When offering the envelope in evidence

at the revocation hearing, counsel for the Government acknowledged he could not say the

envelope had contained a utility bill. *Id*. at 21–22. When cross-examining Detective

Walker, Miles's counsel Wenstrup established that Detective Walker had never contacted

AT&T to confirm whether there was an account in Miles's name for the residence in

question or whether AT&T ever sent Miles a bill for that account at that address and that

Detective Walker did not even know whether the AT&T envelope had contained only an

advertisement. *Id*. at 37–39. Wenstrup also offered in evidence a document from AT&T's

records indicating that, although Miles was paying for an AT&T service account at the

residence in question, AT&T sent Miles the bills for that account at a different Phenix City

address. *Id*. at 92–94.

---

[2] Miles does not include the AT&T recording with his § 2255 motion.
[3] Wenstrup and Vaca are attorneys with the Federal Defender for the Middle District of Alabama. *See* CIV Docs. 7, 8.

Under the circumstances, the Court finds Miles's counsel could reasonably have concluded it was unnecessary to conduct further investigation into the AT&T account for the residence in question or introduce additional evidence (in particular, the recording from AT&T) regarding the AT&T account at that residence. By introducing the document from AT&T's records, Wenstrup was able to establish AT&T sent the bill for the account to Miles at a different address. CR Doc. 89 at 92–94. And Wenstrup, when cross-examining Detective Walker, effectively cast doubt on the significance of the AT&T envelope addressed to Miles at the residence in question, establishing there was no evidence that AT&T billed Miles at that address and no evidence that the envelope ever contained a bill. Thus, Miles fails to prove deficient performance by his counsel.

While Miles appears to suggest that the AT&T envelope addressed to him at the residence in question had been fabricated, such a claim is based only on his unsupported speculation. Miles fails to show that further investigation by counsel into the AT&T account for that residence or introduction of the recording from AT&T would have established that the AT&T envelope was fabricated. For this reason and because, as stated above, Wenstrup effectively undermined the probative value of the AT&T envelope at the revocation hearing, Miles also fails to demonstrate he was prejudiced by his counsel's actions regarding the AT&T evidence. Failing to establish unprofessional error by his counsel or resulting prejudice, Miles is entitled to no relief on this claim of ineffective assistance of counsel.

### 2.     Failure to Call Miles's Fiancée as Witness

Miles claims his counsel rendered ineffective assistance by failing to call his fiancée, Kiana Franklin, as a witness at the revocation hearing. CIV Doc. 1 at 5. According to Miles, Franklin would have provided testimony proving he never lived at the residence identified in the petition to revoke his supervised release. *Id*.

Decisions whether to call a particular witness are generally questions of trial strategy not amounting to ineffective assistance of counsel. *See generally Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess."). Complaints about uncalled witnesses are disfavored. *Sanders v. United States,* 314 F. App'x 212, 213 (11th Cir. 2008). "This is especially true because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice prong of *Strickland*." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Here, Miles offers no testimony or affidavits from Franklin or any other uncalled witness averring that, as Miles claims, Franklin (or any other witness) was willing to testify and provide testimony favorable to Miles. Because Miles fails to establish that any

8

favorable testimony from Franklin would have been forthcoming, he cannot demonstrate prejudice.[4] Failing to demonstrate prejudice, Miles is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.     Location of School

Miles claims his counsel rendered ineffective assistance by failing to investigate whether the residence in question was located within 2,000 feet of a school. CIV Doc. 1 at 6–7. In their affidavits addressing this claim, Wenstrup and Vaca state they investigated the distance between the residence in question and Central High School in Phenix City and that, in their judgment, the distance was less than 2,000 feet—a distance prohibited by Ala. Code § 15-20A-11. CIV Doc. 7 at 2; CIV Doc. 8 at 2. Detective Walker testified at the revocation hearing that he contacted Phenix City's city engineer, Matt McNear, who informed him that the distance between the residence in question and Central High School, from property line to property line as the crow flies, is 1,102 feet, well less than 2,000 feet, which is the proscribed distance under § 15-20A-11. CR Doc. at 8–9.

With his § 2255 motion, Miles attaches a copy of a Google map, which he says shows that the distance between the residence in question and Central High School is 1.3 miles. CIV Doc. 1-1. However, it is clear that the 1.3-mile distance shown on the Google map is the driving distance from the residence to the school, along a winding roadway, measured from building to building. Under the language of the statute that Miles allegedly

---

[4] Although Franklin did not testify at the revocation hearing, Miles's counsel presented evidence that Franklin had signed a statement recanting her original complaint to Detective Walker and had told an investigator with the Federal Defender's office that Miles had never spent the night at her residence, i.e., the residence identified in the petition to revoke Miles's supervised release. CR Doc. 83 at 23–25.

violated, the exclusion zone is measured "in a straight line from nearest property line to nearest property line." Ala. Code § 15-20A-11(g). *See Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1320 (M.D. Ala. 2019). Thus, the Google map does not reflect the relevant distance between the residence and the school and is nonprobative of whether Miles violated the statute or, therefore, his counsel's effectiveness.

Miles fails to demonstrate that the residence in question was located more than 2,000 feet from a school measured "in a straight line from nearest property line to nearest property line." Ala. Code § 15-20A-11(g). He is entitled to no relief on this claim of ineffective assistance of counsel.

### 4.    Preventing Miles from Testifying

Miles claims his counsel prevented him from testifying in his own defense. CIV Doc. 1 at 8; CIV Doc. 2 at 3. Miles makes no proffer of the testimony he would have given at the revocation hearing, and he presents no supporting facts for this claim. In their affidavits addressing the claim, Wenstrup and Vaca state that they did not prevent Miles from testifying but that they "strongly discouraged him from taking the stand." CIV Doc. 7 at 2; CIV Doc. 8 at 3.

The veracity of Miles's conclusory assertion that his lawyers prevented him from testifying at the revocation hearing is called into question by Miles's failure to previously raise this claim before the district court during allocution. Miles never objected to his counsel or voiced any complaints about his counsel. However, even assuming for the sake

of argument that Miles's lawyers prevented him from testifying,[5] Miles fails to show he was prejudiced by his lawyers' actions. Miles does not state what he would have said if he had testified, and he does not explain how the testimony could have altered the outcome given the evidence against him.

In *Franklin v. United States*, 227 F. App'x 856 (11th Cir. 2007), the § 2255 petitioner argued he was denied the right to testify at his trial. *Id.* The Eleventh Circuit held that the district court did not abuse its discretion in denying the § 2255 motion without an evidentiary hearing because the "[petitioner's]'s proposed testimony, in light of both parties' trial evidence, would not have created a reasonable probability that the trial's outcome would have been different." *Id*. at 860. The Court reiterated that "[a] petitioner is not entitled to an evidentiary hearing if his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Id*. at 859.

In rejecting Miles's claim in his appeal from his revocation that there was insufficient evidence to establish that he lived at the Phenix City residence in question, the Eleventh Circuit stated:

> There was sufficient evidence for the district court to find that Miles lived at the residence even though the lease was in his girlfriend [Kiana Franklin]'s name.
>
> First, the mother of Miles's girlfriend testified that Miles was living at the residence and that she removed Miles's clothes from the residence and put them in a box outside. Second, an AT&T document showed that Miles

---

[5] At the time of the revocation hearing, Miles was facing state charges for the crimes underlying the revocation proceedings. Anything he testified to at his revocation hearing could have been used against him at his criminal trials. These considerations could have underlain his lawyers' efforts to discourage him from taking the stand at the revocation hearing.

was paying for a service account at the residence. Even if, as Miles argues, he could have been paying for his girlfriend's service because of her financial difficulties, the court only needed to find by a preponderance of the evidence that Miles lived at the residence.

Finally, the text messages between Miles and the landlord of the residence indicated that Miles exercised control and responsibility over the residence, making it more probable than not that he resided there. In the text exchanges, which started more than two months before his arrest for the alleged violations, Miles generally responded within a few minutes to the landlord's inquiries about the residence's maintenance issues. He also referred to his girlfriend as his "wife" and asked the landlord to remove her name from the lease and to replace it with his own. In support of his request, he told the landlord that he paid the rent.

While each individual piece of evidence may not be determinative, when taken together, the evidence does not lead to a definite and firm conclusion that the district court erred in finding that Miles resided at the residence in violation of two Alabama laws. Thus, the district court did not abuse its discretion in determining that Miles violated his supervised release condition to not commit a federal, state, or local crime, because he committed two Alabama state crimes.

*Miles*, 727 F. App'x at 580 (footnote omitted).

At the revocation hearing, Miles's counsel presented testimony from Miles's mother that Miles lived at his grandmother's apartment in Phenix City at all relevant times. CR Doc. 83 at 3–12. Miles's counsel also presented testimony from an investigator with the Federal Defender's office who stated that Franklin told her that Miles had never spent the night at the residence in question. *Id.* at 23–24. The investigator also testified that Franklin told her she had originally filed the complaint against Miles with Detective Walker because she was angry at Miles. *Id.* at 24–25.

In his § 2255 motion and pleadings, Miles makes no proffer of what his testimony at the revocation hearing would have been. In light of the evidence presented by the parties

at the hearing and the absence of proffered testimony from Miles in his § 2255 motion, the Court finds no reasonable probability that testimony from Miles would have changed the outcome of the proceeding. Because Miles does not show he was prejudiced by his lawyers' actions in dissuading—or preventing—him from testifying, he cannot satisfy the second part of the two-part test in *Strickland*. Consequently, this claim of ineffective assistance of counsel entitles Miles to no relief.

### 5.    Perjured Testimony, Cross-Examination, and Impeachment

Miles claims his counsel rendered ineffective assistance by failing to object to perjured testimony he says was presented by a Government witness at the revocation hearing and by failing to cross-examine and impeach this witness. CIV Doc. 2 at 1–3. He alleges that various statements by Kiana Franklin's mother at the revocation hearing were false (CIV Doc. 2 at 1–2), but he fails to show that this witness's testimony was indeed false. Nothing in the witness's testimony pointed to by Miles is self-contradictory (as Miles seems to argue), and Miles points to nothing outside the hearing transcript that indicates that the witness's testimony was false. Miles's argument is wholly conclusory. Because he fails to establish that the witness gave false testimony and that the Government knowingly presented this false testimony, Miles demonstrates neither deficient performance by his counsel for failing to object nor any prejudice resulting from counsel's failure to object.

Miles's allegations that his counsel failed to cross-examine or attempt to impeach this witness are also unsupported. The record reflects that Wenstrup conducted vigorous cross-examination of the Government's witnesses, including Kiana Franklin's mother, and sought to impeach the Government's witnesses with their alleged biases or with arguable

inconsistencies in their testimony. In questioning the Government's witnesses, Miles's counsel did everything reasonably prudent in his representation and defense of Miles. Demonstrating neither deficient performance nor resulting prejudice, Miles is entitled to no relief on this claim of ineffective assistance of counsel.

### 6.      Failure to Convey Plea Offer

Miles claims his counsel rendered ineffective assistance by rejecting a plea offer from the Government without informing Miles of the offer. CIV Doc. 5 at 1. Miles alleges that, after the revocation hearing, Wenstrup told him he had rejected a plea offer the Government allegedly made before the hearing. *Id*. Miles maintains that he would have pled guilty to the supervised-release violation had he been informed of the plea offer. CIV Doc. 12 at 3–4. In their affidavits addressing this claim, Wenstrup and Vaca aver they are unaware of any plea offer from the Government in Miles's case. CIV Doc. 7 at 3; CIV Doc. 8 at 3. For its part, the Government does not acknowledge that any plea offer was made to Miles or discussed with Miles's lawyers.

In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court explained that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. A formal offer is one with sufficient terms and processing that it "can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146. Where alleged ineffective assistance results in the rejection or lapse of a plea offer, the defendant must show that, but for counsel's ineffective assistance, the defendant would have accepted the

earlier plea offer, and, additionally, the plea would have been entered by the court and the end result would have been more favorable from a plea to a lesser charge or a sentence of less prison time. *Id* at 147.

Miles's claim regarding his counsel's failure to inform him of a plea offer by the Government fails because Miles has not demonstrated that a plea offer was made. Indeed, there is no evidence that a plea offer was ever made. Consequently, Miles does not establish deficient performance by his counsel.

Further, Miles's "own conclusory after-the-fact-assertion" that he would have accepted a guilty plea, without more, is insufficient to demonstrate an entitlement to relief. *See Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015). This is particularly so where the defendant consistently professes his innocence both before and after trial. *Osley v. United States*, 751 F.3d 1214, 1225 (11th Cir. 2014) ("Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal."); *see Rosin*, 786 F.3d at 878–79 (finding defendant failed to sufficiently allege prejudice where the record showed he had consistently maintained his innocence and refused to accept responsibility). Miles has persisted in his assertion of innocence, i.e., that he never lived at the residence identified in the petition to revoke his supervised release. While denial of guilt is not dispositive on this issue, it is a relevant consideration. *Osley*, 751 F.3d at 1214.

Miles also fails to allege or show the terms involved in the Government's alleged plea offer. Thus, he does not establish that the alleged plea offer had terms more favorable than the sentence imposed after his revocation hearing. Miles's fervent claim of innocence,

coupled with his failure to provide evidence of the terms of any plea offer he might have accepted, cannot support his claim of ineffective assistance of counsel. Because he fails to demonstrate deficient performance by his counsel or any prejudice, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.    Advice About Burden of Proof

Miles claims his counsel rendered ineffective assistance by failing to advise him of the Government's burden of proof in a revocation proceeding, in particular, that the standard of proof to support revocation is a "preponderance of the evidence" and not "proof beyond a reasonable" CIV Doc. 5 at 2. According to Miles, had he known the proper standard of proof, he would have pled guilty instead of putting the Government's evidence to the test at the revocation hearing. *Id*.; CIV Doc. 12 at 4. In their affidavits addressing this claim, Wenstrup and Vaca both state they discussed the "preponderance of the evidence" standard with Miles before the revocation hearing. CIV Doc. 7 at 4; CIV Doc. 8 at 3–4.

Because Miles says he would have pled guilty had he known that the "preponderance of the evidence" standard applies to revocation proceedings, much of what this Court says above about Miles's "plea offer" claim applies to this claim as well. Miles has consistently professed his innocence both before and after the revocation proceeding. Miles presents no evidence of a plea offer by the Government, and he fails to show that, had he pled guilty, with or without a plea agreement, the sentence imposed by the district court would have had more favorable terms than the sentence he actually received. Thus, even if Miles's counsel did not advise him of the Government's burden of proof in a

revocation proceeding, Miles demonstrates no reasonable likelihood he would have pled guilty had his lawyers fully explained the Government's burden of proof to him. As such, Miles fails to demonstrate any prejudice resulting from his lawyers' performance. Therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 8.    Newly Discovered Evidence

Miles claims that newly discovered evidence shows he lived at a residence other than the one alleged in the revocation petition. CIV Doc. 13. According to Miles, at some time after the revocation proceeding, Detective Terrance Walker "provided a statement" wherein he maintained he was informed by the DHR that Miles, in March 2017, lived at a Phenix City residence other than the one alleged in the revocation petition. CIV Doc. 13 at 1. Miles does not produce this statement by Detective Walker. However, it appears Miles is referring to an affidavit submitted by Detective Walker in relation to a 42 U.S.C. § 1983 action filed by Miles alleging that Detective Walker violated his constitutional rights when arresting him in May 2017 on the charges underlying the revocation of his supervised release. *See Miles v. Walker*, Case No. 3:18-CV-973-WHA-CSC [Doc. 19-1, Det. Walker's affidavit].

A review of this affidavit reflects that it is consistent with Detective Walker's testimony at Miles's revocation hearing. CR Doc. 89 at 4–50; CR Doc. 83 at 31–35. In his affidavit, Detective Walker states that, sometime after March 2017 but before May 2017, he received information from the DHR that Miles was living with Kiana Franklin at a Phenix City residence different from the residence alleged in the revocation petition. *See* Case No. 3:18-CV-973-WHA-CSC [Doc. 19-1 at 2]. Detective Walker further states that

he confirmed Franklin lived at the residence after surveillance of the property and found that Miles frequently visited the residence. *Id.* At the revocation hearing, Detective Walker testified that, during his supervision of Miles, he determined that Miles had lived with Kiana Franklin at three different residences, that one of the residences was the one reported by DHR, and that another was the one alleged in the revocation petition. CR Doc. 89 at 7, 22–29, 47–48. Nothing in Detective Walker's affidavit in Miles's § 1983 case amounts to a "new statement" that Miles lived only at an address other than the one alleged in the revocation petition.

A new trial based on "newly discovered evidence" is to be granted only with great caution. *United States v. Metz*, 652 F.2d 478, 479 (5th Cir. 1981). For newly discovered evidence to entitle a § 2255 petitioner to a new trial, the petitioner must satisfy four requirements: (1) the evidence must be newly discovered and must not have been known to the petitioner at the time of trial; (2) the evidence must be material and not merely cumulative or impeaching; (3) the evidence must be such that the result probably would have been an acquittal; and (4) the failure to learn of the evidence must not be the result of a lack of due diligence by the petitioner. *Bentley v. United States*, 701 F.2d 897, 898 (11th Cir. 1983).

Miles fails to satisfy the requirements for a new trial based on newly discovered evidence. It is clear that the alleged new statement by Detective Walker does not constitute "newly discovered evidence," as the matters asserted by Detective Walker in the affidavit were known to Miles at the time of the revocation hearing and Detective Walker testified consistently at the revocation hearing. The evidence is, therefore, also cumulative. Finally,

18

the evidence, being the same as evidence presented at the revocation hearing, is not such that the result of the revocation hearing would have been different had it been presented earlier. The district court considered the evidence at the revocation hearing and found Miles violated the conditions of his supervised release. Therefore, Miles is entitled to no relief on this claim.

## IV.    CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS that Miles's Motion to Vacate, Set Aside, or Correct Sentence (CIV. Doc. 1) under 28 U.S.C. § 2255 be DENIED and this case be DISMISSED WITH PREJUDICE. It is further

ORDERED that on or before **May 13, 2021**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec.,*

*Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206

(11th Cir. 1981) (en banc).

DONE this 29th day of April, 2021.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE